UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-254-RJC
(3:08-cr-134-RJC-DSC-5)

| | | |
|---|---|---|
| JUAN GILBERTO VILLALOBOS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion to Dismiss in Response to Petitioner's § 2255 Motion, (Doc. No. 6).

**I. BACKGROUND**

**1. Offense Conduct**

Beginning in the early 2000s, law enforcement officers began investigating the MS-13 street gang and its criminal activities in Charlotte and surrounding areas. Petitioner, whose gang moniker was "Smoke," was a member of the gang. (Crim. Case No. 3:08-cr-134-RJC-DSC-5, Doc. No. 1312 at 4; 8: PSR). During Petitioner's participation in the gang, members committed murders and robberies, trafficked in controlled substances, and committed numerous other attempted and completed acts of violence and intimidation. See (Id. at 8). In November 2007, Petitioner permitted four other MS-13 gang members to use his car to travel to Greensboro for a meeting with veteran gang leaders that was organized by an MS-13 leader jailed in El Salvador. (Id., Doc. No. 1074 at 143-44; Doc. No. 1075 at 16; Doc. No. 1076 at 34: Trial Tr.). Petitioner

1

hosted and attended other gang meetings, during which members conducted business, such as "beating in" new members, collecting "taxes," meting out discipline, and planning. (Id., Doc. No. 1312 at 8-9). One of the methods of control exerted by MS-13 cliques in Charlotte was the collection of a "tax" or "rent" from drug dealers who sought to sell drugs in MS-13-controlled clubs. (Id. at 9). Dealers who initially refused to pay the tax were beaten up, and those who continued to refuse to pay the tax were killed. (Id., Doc. No. 1074 at 139-40; Doc. No. 1080 at 124; Doc. No. 1076 at 41). Petitioner controlled Mi Cabana, a club where he regularly sold cocaine and taxed others who wanted to do the same. (Id., Doc. No. 1074 at 139-40; Doc. No. 1075 at 14-15). Petitioner also sold cocaine out of his garage to other gang members. (Id., Doc. No. 1312 at 16). In addition to running a gang-affiliated club and committing extortion on the gang's behalf, Petitioner also supplied a firearm for an attempted robbery offense and hosted a planning meeting for another armed robbery attempt. (Id. at 17; 19).

**2. Petitioner is convicted of numerous offenses and sentenced to 204 months in prison.**

On July 27, 2009, Petitioner was indicted by the grand jury and charged with membership in MS-13, as well as conspiracy to commit racketeering, in violation of 18 U.S.C. § 1962(d); conspiracy to distribute and possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846; two counts of possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5); illegal use of a communication facility, in violation of 21 U.S.C. § 843(b); distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1); accessory after the fact to assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 3; attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951; possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); and participation in a Hobbs Act extortion

conspiracy, also in violation of 18 U.S.C. § 1951. (Id., Doc. No. 623: Third Superseding Indictment). Petitioner's case and that of five of his co-defendants was tried before an anonymous jury, which convicted him of all charged offenses. (Id., Doc. No. 847: Villalobos Verdict).

In preparation for Petitioner's sentencing hearing, the probation office submitted a Presentence Report ("PSR"), in which the probation officer calculated a total offense level of 37 and a criminal history category of I, resulting in an advisory Sentencing Guidelines range of imprisonment of between 210 and 262 months, plus a 60-month consecutive sentence as to the § 924(c) firearm offense. (Id., Doc. No. 1250 at 27; 36: PSR). Petitioner's total offense level included a two-level enhancement for obstruction of justice based on the post-trial assertion of Juan Vela-Garcia, a co-defendant and Government witness during Petitioner's trial, that, while he was testifying during Petitioner's trial, Petitioner reached for his neck, while Carlos Figueroa-Pineda and Julio Lopez, who were also on trial, nodded their heads and Figueroa stated, "[i]t's like that," as Vela-Garcia left the courtroom. (Id. at 20). Vela-Garcia told agents that he believed that Petitioner, Figueroa, and Lopez were telling him that they would harm him if they could. (Id.). Petitioner objected to the two-level obstruction-of-justice enhancement, as well as to the drug-quantity determination by the probation officer and a leadership enhancement recommended by the probation officer. (Id., Doc. No. 1312 at 41-43).

During Petitioner's sentencing hearing, this Court sustained the drug-quantity and leadership-enhancement objections, finding that Petitioner was responsible for between 3.5 and 5 kilograms of powder cocaine, rather than the five-kilogram quantity recommended by the probation officer, and that Petitioner did not act in a managerial role within the hierarchy of the conspiracy. (Id., Doc. No. 1469 at 14; 21-22: Sentencing Hr'g Tr.). With respect to the

3

obstruction-of-justice enhancement, Petitioner's counsel argued in favor of that objection during the sentencing hearing, noting that counsel "specifically recall[ed]" that during Petitioner's trial, he was sick, his eyes were watering, he had trouble talking, and his throat was sore. (Id. at 23). Counsel argued that, given the assertion that Petitioner simply reached for his neck, and in light of his illness, the evidence was "totally insufficient to apply" the obstruction-of-justice enhancement. (Id. at 24).

Addressing Petitioner's objection to the obstruction-of-justice enhancement, the Government presented the testimony of Charlotte-Mecklenburg Police Department Officer William Hastings, the main investigator in the case. Hastings testified that, following Vela-Garcia's testimony during the capital trial of co-defendant Alejandro Umana, which was conducted five months after Petitioner's, Vela-Garcia was visibly shaken up, prompting Officer Hastings to question him. (Id. at 25). In questioning Vela-Garcia, Officer Hastings asked whether something had happened during Petitioner's trial that had upset him, to which Vela-Garcia responded that Petitioner had grabbed his neck and that he had felt threatened by it. (Id. at 25-26). Upon inquiry by the Court, Officer Hastings testified that, during his earlier conversations with Vela-Garcia, after his arrest and at other times, he was not a person who was vocal in any way but that, in this instance, he was "visibly scared" and "shaking," and Officer Hastings had to "pry the information out of him." (Id. at 27-28).

After hearing this testimony, the Court overruled Petitioner's objection to the enhancement. The Court recalled Vela-Garcia's testimony, noting that the Court "had a sense that this witness was intimidated," and also noting that the Court had warned Petitioner and his co-defendants about glaring at witnesses. (Id. at 29). The Court found that Petitioner grabbed his neck, as Vela-Garcia had asserted, and that Vela-Garcia had been subjectively threatened.

(Id.). The Court concluded that Petitioner made "a very specific gesture, that [Petitioner] knew exactly what he was doing, and the witness perceived what he was intended to perceive," and that "this is the kind of thing under the advisory guidelines that justifies an obstruction enhancement." (Id. at 30). Having sustained two and overruled one of Petitioner's objections, the Court determined that Petitioner's total offense level was a level 32, yielding an advisory range of 121 to 151 months, plus a consecutive, 60-month sentence for the § 924(c) firearm offense. (Id. at 34). The Court then sentenced Petitioner to 144 months, plus 60 consecutive months on the firearm offense, for a total of 204 months in prison. (Id. at 44-45).

Petitioner appealed, challenging, in part, this Court's application of the obstruction-of-justice enhancement in calculating his advisory Guidelines range. The Fourth Circuit affirmed this Court's judgment on May 14, 2013, holding that this Court did not clearly err in finding that Petitioner threatened Vela-Garcia and that the enhancement was warranted. United States v. Fernandez, 526 F. App'x 270, 285 (4th Cir. 2013).

Petitioner placed the petition in the prison system for mailing on May 13, 2014, and the petition was stamp-filed in this Court on May 19, 2014. Petitioner moves this Court to vacate his sentence, asserting three grounds of ineffective assistance of counsel. The Government filed the pending motion to dismiss on January 23, 2015. (Doc. No. 6). On February 4, 2015, this Court entered an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), giving Petitioner until February 18, 2015, to respond to the motion to dismiss. (Doc. No. 8). Petitioner filed his response to the motion to dismiss on February 24, 2015. (Doc. No. 10).

**II. STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

**1. Failure of appellate counsel to seek an abeyance pending Alleyne.**

Petitioner first contends that appellate counsel improperly failed to seek to hold Petitioner's appeal in abeyance pending the Supreme Court's decision in Alleyne v. United States, 133 S. Ct.

2151 (2013), which was decided a little over a month after the Fourth Circuit affirmed this Court's judgment and Petitioner's sentence. In particular, Petitioner asserts that his sentence was improperly enhanced without a jury's finding that the enhancement was warranted. See (Doc. No. 1 at 6). In Alleyne, the Supreme Court overruled Harris v. United States, 536 U.S. 545 (2002), and held that any fact that increases a mandatory minimum sentence is an element of an aggravated offense and must be submitted to a jury and found beyond a reasonable doubt. Alleyne, 133 S. Ct. at 2155, 2161. Thus, for example, because the fact of brandishing increases the statutory mandatory minimum term of imprisonment for a § 924(c) firearm offense, the question of whether the defendant, in fact, brandished the firearm must be found by a jury beyond a reasonable doubt. See id. at 2162.

Here, even if Petitioner's counsel had successfully sought an abeyance of Petitioner's sentencing proceeding pending Alleyne, he would not ultimately have obtained any sentencing relief, because Petitioner was not subject to any statutory mandatory minimum based on a fact not found by the jury in this case. The only mandatory minimum to which Petitioner was subject was the 60-month term dictated by 18 U.S.C. § 924(c) based on a classic, non-aggravated § 924(c) offense. Because the jury found that Petitioner committed that offense, any requirement under Alleyne for the application of that mandatory minimum was satisfied. Because Petitioner was not subject to any other mandatory minimum term of imprisonment, Alleyne requires no more. Therefore, Petitioner's counsel was not deficient in failing to seek to hold Petitioner's sentencing proceeding in abeyance pending Alleyne, nor can Petitioner show any prejudice from counsel's failure to do so.

In sum, Petitioner's first claim for relief is without merit.

**2. Failure of trial counsel to investigate.**

Petitioner next contends that trial counsel failed to conduct adequate pretrial investigation and failed, therefore, to develop an adequate defense. Petitioner does not identify, however, any exculpatory evidence that could have been developed as a result of such investigation. Moreover, particularly in light of the overwhelming evidence presented at trial against Petitioner, this speculative claim fails as a matter of law. Cf. United States v. Dyess, 730 F.3d 354, 365 (4th Cir. 2013) (rejecting, as too speculative, an ineffective-assistance-of-counsel claim based on counsel's failure to call necessary witnesses, where the petitioner failed to identify witnesses that should have been called or "what aid their testimony would have provided").

In sum, Petitioner's second claim for relief is without merit.

**3. Failure to subpoena medical records.**

Finally, Petitioner contends that trial counsel improperly failed to subpoena Petitioner's medical records or obtain the testimony of medical staff at the detention center where he was detained during his trial to support his assertion, made during his sentencing hearing, that he was suffering from a severe cold and sinus infection at the time he was alleged to have "grabbed his throat" and threatened Vela-Garcia. As the sentencing hearing transcript makes clear, however, Petitioner's counsel informed the Court that Petitioner had been suffering from an illness at the time of his trial, which illness included a sore throat, watery eyes, etc. Although Petitioner's counsel did not call a witness to support this assertion, there is no indication in the record that this Court disbelieved counsel's statement. Rather, the Court made clear in explaining its decision to overrule Petitioner's objection to the obstruction-of-justice enhancement that, regardless of whether Petitioner was suffering from a cold, he purposely grabbed his throat in a way that was intended to, and did, in fact, communicate a threat to Vela-Garcia sufficient to support the enhancement. As noted, the Fourth Circuit subsequently affirmed this Court's

8

application of the enhancement. Petitioner simply cannot show that, had his counsel presented the testimony of medical staff supporting his claim of Petitioner's illness, this Court would have declined to impose the enhancement.

In sum, Petitioner's third claim for relief is without merit.

### IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 petition is denied and dismissed.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's § 2255 motion, (Doc. No. 1), is denied and dismissed with prejudice. To this extent, the Government's Motion to Dismiss in Response to Petitioner's § 2255 Motion, (Doc. No. 6), is **GRANTED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Robert J. Conrad, Jr.
United States District Judge